43 C.C.P.A. (Customs) 147

**S. J. CHARIA & CO., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 4841.**

United States Court of Customs
and Patent Appeals.

June 21, 1956.

Allerton deC. Tompkins, New York City, for appellant.

Warren E. Burger, Asst. Atty. Gen., Richard E. FitzGibbon, Chief, Customs Section, New York City (Mollie Strum, Trial Atty., New York City, of counsel), for the United States.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and JACKSON (retired), Associate Judges.

JOHNSON, Judge.

This is an appeal from the judgment of the United States Customs Court, Second Division, rendered pursuant to its decision, C.D. 1642, overruling ap-

pellant's protests and sustaining the action of the collector in excluding from entry into the United States certain cigar-lighters which appellant endeavored to import and holding that the involved merchandise should be excluded because of an order of the President, dated March 17, 1934 (65 Treas.Dec. 659, T.D. 47001), and issued in accordance with the provisions of section 337 of the Tariff Act of 1930, 19 U.S.C.A. § 1337, directing the Secretary of the Treasury, through the proper officers, to refuse entry of the merchandise.

On appeal here, appellant's assignment of errors are as follows:

"The United States Customs Court has erred as follows in connection with the matters set forth in the attached Schedule A:

"1. In overruling the protests and protest claims and in entering judgment for the United States, or the Collector, Defendant (Appellee herein), without due process of law, contrary to the Fifth Amendment to the Constitution of the United States of America.

"2. In rendering decision and judgment in these protests by three judges none of whom were present at the hearing in New Orleans where Defendant's witness Luke Yurkovich attacked the honesty, reputation, and character of Plaintiff's only witness Steven J. Charia, the owner of S. J. Charia & Co., Plaintiff (Appellant herein); and in rendering said decision and judgment without benefit of personally hearing or of having personal observation of a witness, over objection of Plaintiff.

"3. In denying on November 4, 1953, and in not granting the motion of Plaintiff filed October 13, 1953, to have Judge William A. Ekwall of the United States Customs Court, assigned to the Second Division to participate with two other judges of that Division at the further hearings or trial and in the decision of the trial court, in said protests.

"4. In denying on November 30, 1954, and in not granting, the motion filed in the trial court on October 27, 1954 by Plaintiff for a retrial.

"5. In failing to provide for rules, regulations, or procedures in accordance with the above-mentioned Fifth Amendment to the United States Constitution whereby a party litigant may exercise his right to have a fair and impartial trial and decision in accordance with due process of law by one or more judges who have had an opportunity personally to hear the testimony and to observe a witness who appears at a trial before the United States Customs Court; and in finding that the existing procedure, which does not permit a party litigant to exercise this right, is appropriate, practicable, and reasonable."

Appellant does not allege any mistake or error of the Customs Court as to the findings of fact or conclusions of law with the single exception of the due process clause of the Fifth Amendment to the Constitution of the United States. The statutes involved are as follows:

Judiciary and Judicial Procedure Act, Title 28, U.S.C.:

"§ 253. Duties of chief judge; precedence of judges

"The chief judge of the Customs Court shall control the fiscal affairs and clerical force of the court; assign or reassign, before trial and under rules of the court, any case for hearing, determination, or both; and promulgate dockets. * * * (June 25, 1948, ch. 646, sec. 1, 62 Stat. 900.)"

"§ 254. Divisions; powers and assignments

"The chief judge of the Customs Court shall divide the judges of such court into three divisions of three judges each, to hear and determine applications for the review of reappraisements of merchandise, protests against decisions of collectors,

petitions for remission of additional duties and such other matters within the jurisdiction of the court as the chief judge may assign to them.

"The chief judge may sit in any division. He may when necessary assign other judges to any division.

"The chief judge may designate a judge or a division and necessary clerical assistants to proceed to any port within the jurisdiction of the United States to hear or to hear and determine cases assigned for hearing at such port.

"A majority of the judges of any division may hear and determine all cases and questions pending therein. (June 25, 1948, ch. 646, sec. 1, 62 Stat. 900; May 24, 1949, ch. 139, sec. 66, 63 Stat. 99.)"

"§ 2071. Rule-making power generally

"The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court. (June 25, 1948, ch. 646, sec. 1, 62 Stat. 961; May 24, 1949, ch. 139, sec. 102, 63 Stat. 104.)"

It will be noted that the above-mentioned statutes provide that the Chief Judge of the Customs Court shall assign or reassign, before trial and under rules of the court, any case for hearing, determination, or both; that the Chief Judge shall divide the court into three divisions of three judges each, to hear and determine protests against decisions of collectors; also, that the Chief Judge may when necessary assign other judges to any division.

The Chief Judge may designate a judge or a division and necessary assistants to proceed to any port within the jurisdiction of the United States to hear or to hear and determine cases assigned for hearing at such port.

Rule 2 of the Customs Court, 28 U.S. C.A., provides for the establishment and designation of the First, Second and Third Divisions of the court, and for the assignment by the Chief Judge, of judges to the divisions. In accordance with the rule the Chief Judge, before the attempted importation of the involved merchandise, had assigned judges to the three divisions and had assigned Judges Lawrence, Rao, and Ford to the Second Division.

Rule 4 of the Customs Court provides for the assignment of certain subject matter to each of the three divisions. The subject matter of the instant case comes within the jurisdiction of the Second Division, to which it was duly assigned by the Chief Judge before trial.

The involved merchandise was sought to be imported at the Port of New Orleans, Louisiana. The record establishes that appellant requested " * * * that this protest be placed on the earliest available docket in the Court of Customs in any place east of the Mississippi and/or Houston, Texas, in order that it be given the most expeditious action possible." In compliance with appellant's request it was placed on the docket at the Port of New Orleans and set for hearing before Judge Ekwall who had been assigned, by the Chief Judge, on circuit to hear cases at the Port of New Orleans.

Appellant's attorney has had many years of practice in the Customs Court and we must presume that he was familiar with the procedure and rules adopted by that court. We must presume that when he went to the Port of New Orleans for the hearing in this case he knew Judge Ekwall had been assigned to hear the case there and that Judge Ekwall was not a member of the Second Division of the Customs Court; that Judges Lawrence, Rao, and Ford were the three judges duly assigned to the Second Division of the court and that the case at bar had been duly assigned, before trial and under the rules of the court, to the Second Division.

The case was set for hearing at New Orleans before Judge Ekwall on July 10, 1953. Appellant made no objection to Judge Ekwall hearing the evidence presented at New Orleans.

The record does not contain any of the testimony adduced at the hearings, either at New Orleans or New York, except that of a witness for appellee whose testimony was to the effect that Mr. Steven J. Charia of the S. J. Charia & Co., the appellant herein, had a bad reputation for truth and veracity.

In appellant's brief under the heading "Injury" it is stated:

"What reason could appellee have for introducing testimony that defamed the appellant herein if it were not to prejudice that person in the eyes of the court? Surely appellee will not now—after the harm is done—claim that he had no motive for such testimony: The court has a right to consider such defamatory testimony. Plaintiff's injury arises from the fact that the three judges of the Second Division considered such slanderous testimony without benefit of having personally observed the defaming witness—without being in a position to judge fairly whether this witness was scurrilous and irresponsible."

After the Customs Court decided this case appellant filed a motion for a retrial and with said motion there was filed an affidavit of the attorney for appellant wherein it is stated:

"* * * Since all of the said three judges of the Second Division have presumably read the defamatory testimony of the said witness Yurkovich, your deponent believes that they have formed an opinion about the weight and effect to be given to such testimony without the benefit of personal observation * * *."

In ruling upon appellant's said motion for a retrial the court stated:

"* * * There is no basis for plaintiff's assumption, and it is not

a fact, that the decision and judgment of this court in the instant case were predicated on testimony favorable or unfavorable to the character, reputation, or credibility of said Charia or defendant's witness Yurkovich. No refernce thereto is contained either in the briefs filed in the case or in the decision of the court * * *."

It is apparent that the decision and judgment of the court was not predicated upon the testimony of the witness Yurkovich.

At the conclusion of the hearing in New Orleans the case was transferred to New York for the taking of further testimony. On October 13, 1953, which was before the hearing by the Second Division, appellant filed a written motion requesting an order by the Chief Judge that Judge Ekwall be assigned "to participate with two judges who are regularly assigned to the Second Division of the United States Customs Court, at the further hearings or trials before the Second Division in New York, N. Y., as well as in the decision of the court * * *."

Appellant contends that the Chief Judge had the authority to assign Judge Ekwall to sit with two of the regular judges of the Second Division under Rule 2(c) of the Customs Court as well as under the statutory provision (28 U.S.C.A. § 254) which states that "The chief judge *may* * * * *when necessary* assign other judges to any division." There is no showing that any of the three judges of the Second Division were disqualified from hearing and deciding the case. There is no showing that it was "necessary" to assign Judge Ekwall to the Second Division. There was no vacancy on the Second Division and so far as the record discloses all three judges who had been duly assigned to the Second Division were fully qualified to hear and determine the case. Assuming, without deciding, that the Chief Judge had the authority to remove, without cause, any one of the regularly assigned judges from the Second Division,

is seems to us that at most appellant's motion to appoint Judge Ekwall to the Second Division involved a matter which was in the discretion of the Chief Judge and we do not think the denial of appellant's motion was an abuse of that discretion.

In the case of Geo. S. Bush & Co., Inc., v. United States, 22 Cust.Ct. 158, C.D. 1175, the Customs Court held, and we think correctly, that the jurisdiction in cases arising by protest has, by statute, been given exclusively to divisions of the United States Customs Court, and that the jurisdiction attaches immediately upon the expiration of the statutory time within which the collector has authority to act.

In the case at bar the jurisdiction of the Second Division of the Customs Court attached immediately when the protests were received by the court. It seems clear to us that Congress contemplated that single judges on circuit should merely hear protest cases and that the divisions should hear and determine such cases.

In the Bush case, supra, the Customs Court correctly held that "Due process of law does not require that the judges or division of three judges which renders the judgment actually see and hear the witnesses testify and observe their demeanor" citing 16 C.J.S. Constitutional Law § 624, Note 40. "Due process of law does not forbid the hearing of a cause on a transcript of evidence formerly heard in court * * *," De La Rama v. De La Rama, 241 U.S. 154, 36 S.Ct. 518, 60 L.Ed. 932.

The Bush case contains a rather comprehensive statement concerning the law and the rules governing the procedure in protest cases in the Customs Court. We agree with the logic and reasoning of the court in that case.

The case of United States v. Nugent, 6 Cir., 100 F.2d 215, cited by appellant is clearly distinguishable from the case at bar. In that case there were involved the requirements of the Tucker Act and the discussion is wholly inapplicable here.

We might state that at the hearings in New York before the three judges of the Second Division Mr. Stephen J. Charia appeared as a witness and the judges of the division had an opportunity to observe the bearing, demeanor, and character traits of Mr. Charia.

For the reasons above stated the decision appealed from is affirmed.

Affirmed.

WORLEY, Judge, concurs in the conclusion.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL, Judge, was present at the argument of this case, but, because of illness, did not participate in the decision.

COLE, Judge, because of illness, did not participate in the hearing or decision of this case.