**UNITED STATES of America,
Petitioner-Plaintiff-Appellee,**

v.

**Carl VATER, Robert Andresen, Ivor B. Clark, Inc., Sidney Zimet, J. George Hacker, Dolores Lyons Ambrose and W. C. Reeves & Co., Inc., Defendants-Appellants.**

**No. 268, Docket 24723.**

United States Court of Appeals
Second Circuit.

Argued April 18, 1958.

Decided Sept. 26, 1958.

Roger P. Marquis, A. Donald Mileur, Attys., Dept. of Justice, Washington, D. C., for petitioner-plaintiff-appellee.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

This is an appeal by certain condemnees from a judgment of the United States District Court for the Eastern District of New York fixing awards in compensation for the taking by the United States of six parcels of land situated in the Towns of Riverhead and Brookhaven, Suffolk County, New York. It is one phase, hopefully the last, of a condemnation proceeding commenced by the United States in February 1952 to acquire approximately 5,000 acres of land in eastern Long Island for the development and testing of jet aircraft. The entire proceeding has been marked by extraordinary delay, most of which is chargeable to the commission appointed by the district court in December 1953 under Rule 71A(h), F.R.Civ.P. 28 U.S. C.A., for the purpose of determining the issues of just compensation.

The first hearings of the commission, dealing with twelve parcels known as the Bobinski group, produced after fifteen months the initial and only report of the commission, a report which the district court remanded to it for lack of specific findings. The amended report, which was not filed until December 1955, contained findings which the district court set aside as clearly erroneous. The substituted findings of the district court, after two appeals to this court, were eventually upheld in their entirety. United States v. Bobinski, 2 Cir., 1958, 254 F.2d 686; 2 Cir., 1957, 244 F.2d 299.

The hearings on the nine parcels known as the Vater group, six of which are involved in this appeal, were held before the commission between November 1954 and April 1955. Thereafter nothing was heard from it. By March 1956 the district court felt that delay on the part of the commission made it necessary to vacate the authority of the com-

Edgar G. Brisach, New York City, George Schenker, John H. Finn, Edward T. Kelly, New York City, Sidney Zimet, Brooklyn, N. Y., Dolores Lyons Ambrose, Patchogue, N. Y., for defendants-appellants.

Perry W. Morton, Asst. Atty. Gen., Harry T. Dolan, Sp. Asst. to Atty. Gen.,

mission to determine just compensation for all parcels on which hearings had not already been held. This was done, and left the commission to make a report on only the nine parcels comprising the Vater group. But no report was forthcoming. In June 1956 counsel for the United States wrote the court, reminding it of the lapse of time since the matter was submitted to the commission. Shortly thereafter the court requested the commissioners to give the matter their immediate attention. Some four months later, on October 10, 1956, the court, having heard nothing from the commission, entered an order on its own motion vacating the reference to the commission which had been made nearly three years before.

Appellants Clark and Reeves, the former owners of parcels 22 and 26 respectively, then filed a motion to vacate the district court's order discharging the commission. In support of the motion their attorney filed an affidavit noting that an appeal was pending at that time in this court with respect to the parcels involved in the first hearing, and stating that the affiant, on October 5, 1956, had requested the commission to delay its report until that appeal had been decided. The United States opposed this motion. It pointed out that the long delay was costly to the United States and unfair to the other condemnees; and that the appeal in the Bobinski case, involving different parcels of land, could not affect the awards on these parcels. As far as appears, the other condemnees took no position on the motion to vacate the order discharging the commission.

On October 29, 1956, the district court held a hearing on the motion to vacate at which all interested parties were given an opportunity to express their views. The court denied the motion to vacate the commission's discharge, adhering to its view that the commission's unexplained and inordinate delay gave the court no alternative. The court then discussed with the parties the proper procedure for terminating the case, suggesting that the court decide the issue of just compensation on the basis of the record made before the commission:

" * * * I want to get this thing so we can decide it. I am not going to drift along. I have tried my best to stop this drift, but I couldn't stop it. They [the commissioners] indicated that they weren't going to file any report at all at one time.

"Now we have got down to these nine parcels, and if the evidence that you introduced before the Commission is available and the briefs are available and I have ended the Commission, well, why not take it over, why shouldn't I do that and make my decision? "

Although counsel for appellants Clark and Reeves objected to the denial of the motion to vacate, stating that a report by the commission was essential to a fair hearing, he did not request a trial *de novo* before the court. On the contrary, he stated that a trial *de novo* would be an unnecessary hardship on all the parties. In short, his position was simply that the district court was powerless to do anything other than resubmit the case to the commission—a commission which, nearly three years after its appointment and eighteen months after the hearings, had failed to file its report, or even to explain its delay to the court. Counsel stated:

"Your Honor, the Commissioners saw the property, they made a report on the prior takings, they have seen the witnesses, they heard the witnesses testify. * * *

"I submit, sir, if there had been no proof taken as to these parcels, there would be no possible objection to your right to recall your order and take the matter before the Court. That was done with respect to other parcels. But I say, sir, that once the matter has gone as far as this has that we are entitled as a matter of law to have the Commissioners submit their report and proceed from there."

The court rejected this position and attempted to find another alternative which would be satisfactory to the parties. What it finally did was to deny in open court appellants' motion to vacate, and it scheduled another hearing at a later date at which the parties could submit anything further, legal argument or proof, as they deemed advisable.

"The Court: * * *

"I am denying the motion to vacate, and I will give you further time, two weeks to add to something which you already have in and which you now wish to put in there, and then this whole matter will be put before me for decision. * * *

"Mr. Finn [attorney for appellants Clark and Reeves]: Well, as I understand it, we will have a hearing before you at which time we can submit such additional proof as we may deem advisable.

"The Court: Right, right.

"Mr. Finn: Very good, sir.

* * * * * *

"Mr. Dolan: I trust your Honor will not open up this thing to days and days of trial again.

"The Court: Well, I will only open it up for such additional proof as Mr. Finn feels he must present. I am interested in the point that they claim they didn't have proper consideration."

Thereafter, on November 2, 1956, the court entered a written order denying the motion to vacate which provided:

"ORDERED that this proceeding is adjourned to November 15, 1956 at 10:30 A.M. for the submission of any further evidence, proof or briefs which any of the interested parties may desire to submit and that thereafter the issues of just compensation affecting parcels 1, 5, 8, 13, 22, 24, 26, 38, and 219 shall be considered and determined by the court upon the evidence previously submitted before the Commission heretofore appointed by the court in this action and as may be submitted by the parties on the adjourned date hereinbefore referred to."

At the hearing on October 29, 1956, in response to repeated inquiries on the part of the court, counsel for two appellants, Ambrose (parcel 219), and Ambrose, Hacker and Zimet (parcel 26), indicated by affirmative statement their satisfaction with the procedure worked out by the court. Appellants Vater and Andresen indicated their consent by their silence. Only appellants Clark and Reeves, by their attorney, indicated dissatisfaction with the court's procedure, and, as stated above, their attorney's position was simply that the court could not under the circumstances discharge the commission.

To some degree appellants took advantage of the opportunity to offer further proof. At the hearing on October 29, the court, at the request of appellant Vater, received further testimony from Miller, an expert witness as to parcel 1, who had previously testified before the commission. In addition, appellant Ambrose, who had failed to offer any evidence before the commission of the value of parcel 219, submitted on November 9, 1956 two affidavits with respect to its value. Neither on October 29 nor on November 15 did the appellants choose to make any further presentation of evidence.

The court then took the case under advisement and thereafter on December 6, 1956, rendered the decision and judgment from which this appeal is taken. The compensation awards as found by the district court were based on the record made by the parties before the commission and on such further evidence as was submitted to the court. Although awards were made with respect to all nine parcels, no appeal was taken as to three, and only six parcels are involved in this appeal. Three questions are presented for our decision: (1) whether the district court erred in withdrawing the case from the commission; (2) whether the procedure followed by the court after withdrawal of the case from

the commission was consistent with due process; and (3) whether there is sufficient evidence in the record to support the awards as found by the court. These questions will be considered *seriatim*.

1. *Withdrawal of the Case from the Commission.*

 Appellants attack the discharge of the commission before it had reported and ask that we direct the district court to resubmit the case to the discharged commissioners. We think that the district court acted properly in withdrawing the case from the commission and that a resubmission of the case to the commissioners would be a denial of substantial justice to the United States.

Rule 71A(h), F.R.Civ.P., although favoring trial by jury where any party files a timely demand, provides for trial of the issue of just compensation by any special statutory method prescribed by Congress or, if the court, in its discretion, "because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice," so determines, by a commission of three persons appointed by the district court. The wording of the rule indicates that the usual mode of trial in condemnation proceedings will be to a jury or to the court, and that references to a commission should only be made in the discretion of the district court for good cause shown. Parties to a condemnation proceeding do not have a right to have compensation determined by a commission.

No question is raised on this appeal as to the propriety of the appointment of a commission on the facts of this case. Nevertheless, as we stated in the Bob-

inski case, 244 F.2d 299, 301, the initial appointment was of doubtful propriety, not only because none of the parties had demanded a jury trial,[1] but also because exceptional circumstances justifying a reference do not seem to be present. In any event, as the district court came to realize, the appointment of the commission created far more problems than it solved, problems that ultimately required the court to perform a painful salvage operation in order to dispose of the case.

We think there can be no doubt but that the first part of the district court's salvage operation, that of resolving the impasse which had been reached by withdrawing the case from the commission, was fully justified, if not indeed required. The commission, after hearing the evidence, had not made a report in eighteen months. Some seven months had elapsed since the district court, because of the commission's dilatory conduct, had withdrawn all parcels from the reference except the ones involved in this case. Nearly four months had passed since the district court had written the commissioners specifically asking them to expedite their report. The commission did not even deign to reply or to give any reason for refusing to report. Indeed, the commission's conduct indicates that it gave no heed whatever to the instructions of the district court to expedite the matter. Except for contempt of court proceedings against the commissioners individually, we can think of no remedy available to the district court to solve the problem created by the commission's refusal to act other than a withdrawal of the reference. Thus the district court was clearly acting within its powers in withdrawing the case from the commission.

---

[1] Rule 71A(h) provides in pertinent part that " * * * any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer * * *, unless the court in its discretion orders that * * * the issue of compensation shall be determined by a commission of three persons appointed by it. * * * Trial of all issues shall otherwise be by the court." This language would appear to contemplate the appointment of a commission, for good cause shown, only where a jury trial has been demanded.

### 2. Procedure Followed by Court After Withdrawal of the Case from the Commission.

 Appellants attack the second part of the district court's salvage operation, that of determining the issues of just compensation on the basis of the record made before the commission and upon any evidence which the parties might desire to submit to the court, as a denial of due process. Although this presents a more substantial question we think that the determination by the court of the issues of just compensation was consistent with due process under the circumstances of this case.

In the first place, four of the appellants failed to properly preserve this point for an appeal. Ambrose and Zimet, in response to questions put to them by the court, affirmatively indicated their satisfaction with the procedure decided upon by this court. Vater and Andresen failed to object when given the opportunity and thus, by their silence, indicated their consent to the course taken by the court. Although Rule 46, F.R.Civ.P., makes a formal exception unnecessary, a party must still make it clear that he objects to an action of the court in order to preserve the point for an appeal. See, e. g., Olsen v. Realty Hotel Corp., 2 Cir., 1954, 210 F. 2d 785; Ring v. Authors' League of America, 2 Cir., 1951, 186 F.2d 637, certiorari denied 1951, 341 U.S. 935, 71 S.Ct. 854, 95 L.Ed. 1363. Of course, where it is in the interests of justice, we will consider a point on appeal even though counsel through negligence or inadvertence has failed below to claim his client's strongest point. Massachusetts Bonding & Ins. Co. v. Hussmann Refrigerator Co., 8 Cir., 257 F.2d 814, note 2 (2 Cir. July 11, 1958); Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 2 Cir., 1956, 234 F.2d 253, 259, note 9. Here, however, there was more than a careless failure to claim a point—counsel remained silent when affirmative action was called for unless the court was to be tricked. Thus the point can only be considered with respect to appellants Clark and Reeves, who alone objected to the procedure decided upon by the court.

Appellants Clark and Reeves do not complain that they have not received a jury trial, nor could they do so. None of the parties filed a timely demand for a jury trial and all acquiesced in conducting the trial before the commission appointed by the district court. Nor do appellants Clark and Reeves desire a trial de novo before the district court. Both below and in this court they have steadfastly rejected the possibility of a trial de novo—the only feasible alternative to the course chosen by the district court. Under these circumstances, we do not think they can complain that the district court decided the case primarily upon the record made before the commissioners.

We do not deprecate the importance of demeanor evidence nor the desirability that the trier of fact should see and hear the witnesses. See Rule 52(a), F. R.Civ.P.; Orvis v. Higgins, 2 Cir., 1950, 180 F.2d 537, 538, certiorari denied, 1950, 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595. But we do think that a litigant cannot require the court to continue a reference which the court properly thinks should be withdrawn by refusing to accept any other method for determining the issues.

At the hearing on October 29, 1956, the district court, having decided that the case should be withdrawn from the commission, was attempting to discover an effective mode of disposing of this unfortunate case. The court on its part never rejected the possibility of a trial de novo. It did, however, correctly assume that the parties would not desire to re-present all the evidence. The transcript of this hearing and the order entered thereafter clearly indicate that appellants had full opportunity to present any evidence they desired the court to hear. For aught we know, the district court would have been willing to hear all the witnesses who had previously testified, in addition to any new evidence the parties wished to adduce. Appellants never asked to re-present all or

part of the evidence to the court, and when the court gave them the opportunity, they failed to take advantage of it. They chose only to produce on a minor matter an expert, who had testified before the commission, in order to supplement the testimony previously given; and also to introduce several affidavits relating to matters not touched upon before the commission. When appellants, having been given an opportunity for a full hearing which they refused to take advantage of, merely insisted that they were entitled to have the discharged commission decide the case, the court was perfectly justified in deciding the case on the basis of the record made before the commission.

Although the Supreme Court has said that "one who decides must hear," Morgan v. United States, 1936, 298 U.S. 468, 481, 56 S.Ct. 906, 80 L.Ed. 1288, it is well established that the due process clause does not require under all circumstances that factual determinations be made by the person hearing the evidence. National Labor Relations Board v. Mackay Radio & Telegraph Co., 1938, 304 U.S. 333, 350, 58 S.Ct. 904, 82 L.Ed. 1381; Morgan v. United States, supra, 298 U.S. at pages 480–482, 56 S.Ct. at pages 911, 912; De La Rama v. De La Rama, 1916, 241 U.S. 154, 36 S.Ct. 518, 60 L.Ed. 932; D. M. W. Contracting Co. v. Stolz, 1946, 81 U.S.App.D.C. 334, 158 F.2d 405, certiorari denied 1947, 330 U.S. 839, 67 S.Ct. 980, 91 L.Ed. 1286; Eastland Co. v. Federal Communications Comm., 1937, 67 App.D.C. 316, 92 F.2d 467, certiorari denied 1937, 302 U.S. 735, 58 S.Ct. 120, 82 L.Ed. 568; United States ex rel. Minuto v. Reimer, 2 Cir., 1936, 83 F.2d 166; Crow v. Industrial Comm., 1943, 104 Utah 333, 140 P.2d 321, 148 A.L.R. 316. Cf. Smith v. Dental Products Co., 7 Cir., 1948, 168 F.2d 516; S. Buchsbaum & Co. v. Federal Trade Comm., 7 Cir., 1946, 153 F.2d 85, certiorari granted, and judgment vacated on respondent's waiver of decision in its favor, 1946, 328 U.S. 818, 66 S.Ct. 1016, 90 L.Ed. 1600. The importance of demeanor evidence to the particular case is an important but not always determinative consideration. In any event, the present appeal does not squarely raise the constitutional issue, for appellants Clark and Reeves never desired or attempted to have the trier of fact—the district court—hear the evidence before deciding the case. This case is more akin to Bobinski, involving this same condemnation proceeding, in which we held that the district court, when it determines that findings of a commission are clearly erroneous, is not required to resubmit the case to the commission, but may make its own findings. 2 Cir., 1957, 244 F.2d 299, The Fifth Circuit has recently taken the same position. United States v. Twin City Power Co., 5 Cir., 1958, 253 F.2d 197, 204. See also United States v. Twin City Power Co., 4 Cir., 1957, 248 F.2d 108, 112; United States v. 44.00 Acres of Land, 2 Cir., 1956, 234 F.2d 410, certiorari denied sub nom. Odenbach v. United States, 1956, 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed.2d 123; United States v. City of New York, 2 Cir., 1948, 165 F.2d 526, 531, 1 A.L.R.2d 870. We conclude that the procedure followed by the district court in this case was consistent with the requirements of due process.

### 3. *Sufficiency of the Evidence.*

Finally, appellants present a variety of arguments going to the alleged inadequacy of the awards found by the district court. Their general contention that the court's findings must fall because they are not buttressed by a lengthy opinion reciting well-known rules of condemnation law is so lacking in merit that it does not require further discussion. Equally unfounded is the claim of error based upon the district court's reliance on evidence of comparable sales of land in the immediate vicinity which occurred at or about the time of taking.

Several findings, however, are subjected to more specific attack. First, it is contended that the evidence does not support the court's findings that appellants did not prove the existence of severance damages on parcels 1 and 24. We

disagree. With respect to parcel 1 the claimed severance damages were nothing more than an alleged loss sustained by frustration of a business plan, a loss which is not compensable in condemnation proceedings. See, e. g., United States ex rel. Tennessee Valley Authority v. Powelson, 1943, 319 U.S. 266, 281–283, 63 S.Ct. 1047, 87 L.Ed. 1390. With respect to parcel 24, the claimed severance damages were said to arise because the portion not taken was without frontage on an open road. The record reveals that for many years there has been no physical access by an open road to the uncondemned land. But there has been a right of access, not taken by the United States, over an old road which has not been used for some years. Thus before the condemnation, as well as after, there was access to the uncondemned land by opening this unused road. Since the condemnation had no adverse effect on the uncondemned land, severance damages were not proved.

It is also urged that the district court should not have excluded the value of a cottage removed from parcel 13 by its owner without the consent of the United States. The record shows that the cottage was included in the taking and that the removal was wrongful. The value of an improvement which is wrongfully removed should be deducted from the award. Clark v. United States, 8 Cir., 1946, 155 F.2d 157, 162–163. Appellants' reliance on the Bobinski case, 244 F.2d 299, 302–303, is misplaced since that case involved a rightful removal pursuant to the express provision of the declaration of taking.

Affirmed.

LUMBARD, Circuit Judge (dissenting).

The claimants were entitled to a trial of the issues and that means nothing less than that the trier of the facts should hear the evidence. This important constitutional right is the essence of our system of justice and its denial is a violation of the guarantee of due process. We ought not to trifle with so fundamental a right by straining to construe a consent from a failure to request a trial *de novo*, especially where, in my view, it was implicit in the claimants' objection to the dismissal of the commission that the claimants were not consenting to a substitute trier of the facts who had not heard the witnesses.

I agree with my brothers that the district judge had the power to withdraw these claims from the commissioners and discharge them because of their long delay and inexcusable inattention to their duties and the communications of the court. But the three year delay on the part of the commissioners did not justify the district judge's unseemly haste once he had decided to oust them.

The district judge on his own motion entered an *ex parte* order on October 10, 1956 and took "all issues now pending and undetermined before said commission" away from the commission and ordered all the parties to appear before him on October 29 "for the purpose of offering any further proof or testimony concerning the issues of just compensation * * * *and/or stipulating* that the Court may hear and determine said issues upon the record heretofore made before the Commission." (Emphasis supplied.) Thus at the outset the judge realized that he could not decide the claims on the record already made unless the parties consented. Nowhere does the record show a consent or stipulation by the claimants to have the district judge pass on the issues by reading the cold black and white of the lengthy record made before the commission and to decide disputed questions of fact and opinion which turn on the trier's view of the credibility of witnesses without the benefit of having heard and seen the witnesses. On the contrary the claimants immediately moved to vacate the order of October 10.

When the matter was heard on October 29 the claimants urged that the claims be returned to the commission but the district judge refused to vacate his *ex parte* order of October 10. The government,

on the other hand, urged the judge to decide the claims on what had been heard before the commissioners.

When the claimants took exception to the denial of their motion to vacate the October 10 order, the district judge made it abundantly clear that he would only open up the record for additional proof and he would set November 15 for hearing further proof. This ruling was incorporated in a formal order signed November 2, 1956 which contained this paragraph:

"Ordered that this proceeding is adjourned to November 15, 1956, at 10:30 A.M. for the submission of any *further* evidence, proof or briefs which any of the interested parties may desire to submit and that thereafter the issues of just compensation affecting parcels 1, 5, 8, 13, 22, 24, 26, 38, and 219 shall be considered and determined by the court upon the evidence before the court in this action and as may be submitted by the parties on the adjourned date hereinbefore referred to." (Emphasis supplied.)

It is to be noted that the order provided for hearing "further evidence" on November 15, and that the claims would then be decided on the basis of what was already before the court, namely, the record before the commissioners together with any product of the November 15 hearing.

No further evidence was offered on November 15 and the judge filed his opinion a few days later on December 6.

In my view of the facts this case is very much like Smith v. Dental Products Co., 7 Cir., 1948, 168 F.2d 516, where the Court of Appeals reversed the action of the district judge in proceeding to decide issues on the record made before a master who had died before making his report. There were disputed factual issues before the master. The parties had not consented to the district judge deciding on the record before the master. The Court of Appeals pointed out at page 519 that "* * * the deciding officer, whether administrative in character or judicial, has a real function to perform in due process. * * * The requirement of a 'full hearing' has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts. The 'hearing' is designed to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action. The 'hearing' is the hearing of evidence and argument. If the one who determines the facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given. * * * *"

And the Court concluded by saying: "We think it was the duty of the District Court, in the absence of findings and report from the Master, in order to afford the parties a hearing within the recognized legal meaning of that word, to direct a trial de novo before another Master or before itself." See also S. Buchsbaum & Co. v. Federal Trade Commission, 7 Cir., 1946, 153 F.2d 85.

Furthermore, the objections to the district court procedure made by claimants Clark and Reeves should inure to all six appellants. Although the application for reinstatement of the commission was made by the attorney for Clark and Reeves, it is clear that on argument the attorneys for the other claimants joined in the motion and the district court considered it as made for all nine.

"Mr. Finn: There is one other point which I wish to make clear: It is time that I made the motion on behalf of the two property owners, but I think if you will ask counsel here present in court you will find that I told them that I would make this motion and they said that they would join on the application, or rather on the argument of it.

**676**

"The Court: Well I will consider the whole nine. I want to get this thing so we can decide it."

Nor can I find in the record any support for the view of the majority that two of the claimants, in requesting clarification of the district judge's order and permission to file briefs affirmatively stated "satisfaction with the procedure worked out by the court."

I would reverse the judgment of the district court and remand for a trial *de novo*.